**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**CENTRAL ISLIP DIVISION**

| | |
|---|---|
| RAYMOND HUDSON, Individually and For All Others Similarly Situated<br><br>v.<br><br>ONE CALL CONCEPTS LOCATING SERVICES, INC. | Case No. _____<br><br>Jury Trial Demanded<br><br>Rule 23 Class Action |

## ORIGINAL CLASS ACTION COMPLAINT

### SUMMARY

1. Raymond Hudson ("Hudson") brings this class action to recover untimely wages and other damages from One Call Concepts Locating Services, Inc. ("One Call").

2. One Call is a utility locating service provider that employs numerous people in New York State, a majority of whom are "manual workers" as contemplated by § 191 of the New York Labor Law ("NYLL").

3. For example, One Call employed Hudson as one of its Hourly Utility Locators (defined below) in and around Suffolk County, New York.

4. Despite being manual workers, One Call failed to properly pay Hudson and its other Hourly Utility Locators their wages within seven calendar days after the end of the week in which they earned such wages.

5. Instead, One Call uniformly paid Hudson and its other Hourly Utility Locators on a bi-weekly basis.

6. In this regard, One Call failed to timely pay earned wages to Hudson and its other Hourly Utility Locators.

1

7. As manual workers, Hudson and the other Hourly Utility Locators are "dependent upon their wages for sustenance." *See People v. Vetri*, 309 N.Y. 401, 405 (1955).

8. Accordingly, One Call's failure to timely pay wages owed to Hudson and the other Hourly Utility Locators constitutes an "especially acute injury" under NYLL § 191. *See Caul v. Petco Animal Supplies, Inc.,* No. 20-CV-3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 [N.Y. 1st Dept. 2019]).

## JURISDICTION & VENUE

9. This Court has original subject matter jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

10. Specifically, (a) the matter in controversy exceeds $5,000,000; (b) at least one member of one member of Hudson's proposed class of Hourly Utility Locators and One Call are citizens of different states (indeed, Hudson is a New York citizen, whereas One Call is a Maryland citizen); and (c) the proposed class of Hourly Utility Locators exceeds 100 members.

11. This Court has specific personal jurisdiction over One Call with respect to this action because One Call employed Hudson and the other Hourly Utility Locators in New York.

12. Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

13. Specifically, One Call employed Hudson in and around Suffolk County, New York, which is in this District and Division.

## PARTIES

14. One Call employed Hudson as a Utility Locator in and around Suffolk County, New York from approximately August 2019 until October 2021.

15. Hudson was One Call's covered "employee" within the meaning of the NYLL.

2

16. Throughout his employment, Hudson worked for One Call as a "manual worker" within the meaning of NYLL § 191.

17. But throughout his employment, One Call failed to timely pay Hudson his wages within seven calendar days after the end of the week in which he earned such wages.

18. Instead, One Call paid Hudson on a bi-weekly basis in willful violation of the NYLL.

19. Hudson brings this class action on behalf of himself and other similarly situated One Call Utility Locators in New York whom One Call failed to timely pay their lawfully earned wages.

20. One Call failed to timely pay each of these manual workers their wages within seven calendar days after the end of the week in which they earned such wages.

21. Instead, One Call paid each of these manual workers on a bi-weekly basis in willful violation of the NYLL.

22. The putative class of similarly situated employees is defined as:

> **All employees who worked for One Call as hourly Utility Locators in New York who were not paid on a weekly basis at any time during the past 6 years and 228 days[1] from the filing of this Complaint and the date of final judgment in this matter (the "Hourly Utility Locators").**

23. The Hourly Utility Locators can be readily ascertained from One Call's business and personnel records.

24. One Call is a Maryland corporation headquartered in Hanover, Maryland.

25. One Call is registered to do business in the State of New York.

---

[1] This class period is due to Governor Cuomo's Executive Orders that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for a total of 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law); *McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings Cnty. 2021) (calculating that, together, Governor Cuomo's Executive Orders lasted 228 days).

26. One Call may be served through its officers, directors, managing agents, or general agents at its registered office: **7223 Parkway Drive, Suite #200, Hanover, Maryland 21076**.

27. At all relevant times, One Call was, and is, a covered "employer" within the meaning of the NYLL.

28. Indeed, at all relevant times, One Call employed Hudson and the other Hourly Utility Locators as manual workers in New York.

29. At all relevant times, One Call has maintained control, oversight, and direction over Hudson and the other Hourly Utility Locators, including timekeeping, payroll, and other employment practices that applied to them.

30. One Call applies the same employment policies, practices, and procedures to all the Hourly Utility Locators in its operation, including policies, practices, and procedures with respect to payment of wages.

## FACTS

31. One Call provides "damage prevention support … geared towards protection of underground utilities" across the country, including in New York.[2]

32. To meet its business objectives, One Call employs manual workers, including Hudson and the other Hourly Utility Locators, to provide utility locating services to its clients.

33. While exact job duties and precise locations worked may differ, Hudson and the other Hourly Utility Locators are all subjected to One Call's same or similar illegal policies for similar work.

34. For example, Hudson worked for One Call as a Utility Locator in and around Suffolk County, New York from approximately August 2019 until October 2021.

35. Throughout his employment, over 25% of Hudson's duties were physical tasks,

---

[2] https://www.occls.com/ (last visited December 11, 2023).

4

including but not limited to: walking, climbing, and crawling around assigned areas while carrying utility locating equipment (e.g., ground-penetrating radar detectors, GPS, paint cans, flags, etc.) to detect underground utilities; marking the locations of underground utilities by painting symbols on, and inserting flags into, the ground; assisting construction crews with digging ditches; and standing or otherwise being "on his feet" for extended periods of time.

36. Despite regularly spending more than 25% of his shift performing these physical tasks, One Call failed to timely pay Hudson his earned wages.

37. Instead, One Call paid Hudson on a bi-weekly basis.

38. As a result of One Call's untimely wage payments, One Call underpaid Hudson for the first seven days of each bi-weekly pay period throughout his employment in New York.

39. Thus, One Call paid Hudson on an untimely basis in willful violation of the NYLL.

40. For example, for the period beginning on September 13, 2020 to September 26, 2020, One Call did not pay Hudson his lawfully earned wages until October 2, 2020:



5

41. In this regard, One Call failed to timely pay Hudson his wages earned from September 13, 2020 to September 19, 2020 not later than seven days after he earned such wages (by September 26, 2020) as required by NYLL § 191(1)(a).

42. As a result of One Call's untimely wage payments, One Call underpaid Hudson for the entire period of September 13, 2020 to September 19, 2020, and for every corresponding period where One Call paid Hudson on an untimely basis.

43. Moreover, One Call's underpayments denied Hudson the time-value of his earned wages. *See Freeland v. Findlay's Tall Timbers Distrib. Ctr., LLC*, --- F. Supp. 3d. ---, 2023 WL 4457911, at *7 (W.D.N.Y. July 11, 2023) (holding an employee's "lost time value of his wages" from being paid late was an injury in fact).

44. For example, Hudson was unable to invest, save, or purchase utilizing the wages he earned during the first seven days of each bi-weekly pay period throughout his employment.

45. And One Call similarly underpaid Hudson for every workweek it paid his lawfully earned wages after more than seven days within the time he completed his work.

46. One Call uniformly subjects its other Hourly Utility Locators to the same illegal policies it imposed on Hudson.

47. Indeed, the other Hourly Utility Locators perform the same or similar physical job duties as Hudson.

48. Like Hudson, over 25% of the other Hourly Utility Locators' duties are physical tasks, including but not limited to: walking, climbing, and crawling around assigned areas while carrying utility locating equipment (e.g., ground-penetrating radar detectors, GPS, paint cans, flags, etc.) to detect underground utilities; marking the locations of underground utilities by painting symbols on, and inserting flags into, the ground; assisting construction crews with digging ditches; and standing or otherwise being "on their feet" for extended periods of time.

49. But like Hudson, despite regularly spending more than 25% of their shift performing these physical tasks, One Call fails to timely pay its other Hourly Utility Locators their earned wages.

50. Instead, like Hudson, One Call uniformly pays its other Hourly Utility Locators on a bi-weekly basis.

51. As a result of its untimely wage payments, One Call uniformly underpays its Hourly Utility Locators for the first seven days of each bi-weekly pay period.

52. Thus, like Hudson, One Call also uniformly pays its Hourly Utility Locators on an untimely basis in willful violation of the NYLL.

53. And like Hudson, One Call's underpayments similarly deny the other Hourly Utility Locators the time-value of their money, as they are unable to invest, save, or purchase utilizing the wages they earned and are owed during each underpaid workweek.

54. Accordingly, because One Call uniformly underpays Hudson and its other Hourly Utility Locators for every workweek it pays their lawfully earned wages after more than seven days within the time they complete their work, One Call violated the NYLL.

## ONE CALL'S NYLL VIOLATIONS WERE WILLFUL AND DONE IN RECKLESS DISREGARD OF NEW YORK LAW

55. Hudson incorporates all other paragraphs by reference.

56. One Call knew it was subject to the NYLL and its supporting regulations, including the timely payment of wages provisions.

57. One Call knew the NYLL required it to pay manual workers their lawfully earned wages weekly and not later than seven calendar days after the end of the week in which such wages are earned.

58. One Call knew Hudson and its other Hourly Utility Locators regularly spent more than 25% of their shift performing physical tasks.

59. In other words, One Call knew, should have known, or recklessly disregarded whether Hudson and the other Hourly Utility Locators were "manual workers" under the NYLL.

60. Nonetheless, One Call did not pay Hudson and its other Hourly Utility Locators their lawfully earned wages within seven calendar days after the end of the week in which they earned such wages.

61. Instead, One Call paid Hudson and its other Hourly Utility Locators on a bi-weekly basis.

62. In other words, One Call knew, should have known, or recklessly disregarded whether it failed to timely pay Hudson and the other Hourly Utility Locators their lawfully earned wages in violation of the NYLL.

63. One Call's failure to timely pay Hudson and its other Hourly Utility Locators their lawfully earned wages was neither reasonable, nor was One Call's decision to pay these manual workers on a bi-weekly basis made in good faith.

64. One Call knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the NYLL.

65. One Call knowingly, willfully, and/or in recklessly disregard carried out its illegal policies that systematically deprived Hudson and the other Hourly Utility Locators of their lawfully earned wages in violation of the NYLL.

66. In sum, One Call's violations of the NYLL were willful, carried out in bad faith, and caused significant damage to Hudson and the other Hourly Utility Locators.

### CLASS ACTION ALLEGATIONS

67. Hudson incorporates all other paragraphs by reference.

68. Like Hudson, the other Hourly Utility Locators are uniformly victimized by One Call's non-weekly pay scheme.

69. Other Hourly Utility Locators worked with Hudson and indicated they were paid in the same manner, performed similar physical work, and were subject to One Call's same illegal non-weekly pay scheme.

70. Based on his experience with One Call, Hudson is aware One Call's illegal practices were imposed on the other Hourly Utility Locators.

71. Hudson and the other Hourly Utility Locators have all been injured in that they have been compensated in an untimely manner due to One Call's common policies, practices, and patterns of conduct.

72. Indeed, One Call's corporate-wide policies and practices affected Hudson and the other Hourly Utility Locators similarly.

73. And One Call benefited from the same type of unfair and/or wrongful acts as to each Hourly Utility Locator.

74. The putative class of Hourly Utility Locators includes more than 100 members.

75. Thus, the putative class of Hourly Utility Locators is so numerous that the joining of all class members in one lawsuit is not practical.

76. The Hourly Utility Locators are similarly situated in the most relevant respects.

77. Even if their precise job titles, exact duties, and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to their lawfully earned wages.

78. Rather, the Putative Class is held together by One Call's non-weekly pay scheme, which systematically deprived Hudson and the Hourly Utility Locators of their lawfully earned wages.

79. One Call's records reflect the wages each Hourly Utility Locator earned each workweek.

80. One Call's records also reflect it failed to pay its Hourly Utility Locators their lawfully earned wages within seven days of the time they completed their work.

81. The untimely wages owed to Hudson and the other Hourly Utility Locators can therefore be calculated using the same formula applied to the same records.

82. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to One Call's records, and there is no detraction from the common nucleus of liability facts.

83. Therefore, the issue of damages does not preclude class treatment.

84. And Hudson's experiences are therefore typical of the experiences of the other Hourly Utility Locators.

85. Hudson has no interest contrary to, or in conflict with, the interests of other Hourly Utility Locators that would prevent class treatment.

86. Like each Hourly Utility Locator, Hudson has an interest in obtaining the untimely wages and other damages owed to them under New York law.

87. Hudson and his counsel will fairly and adequately represent the Hourly Utility Locators and their interests.

88. Indeed, Hudson retained counsel with significant experience in handling complex class action litigation.

89. A class action is superior to other available means for fair and efficient adjudication of this lawsuit.

90. Absent this class action, many Hourly Utility Locators will not obtain redress for their injuries, and One Call will reap the unjust benefits of violating New York labor laws.

91. Further, even if some of the Hourly Utility Locators could afford individual litigation against One Call, it would be unduly burdensome to the judicial system.

92. Indeed, the multiplicity of actions would create a hardship for the Hourly Utility Locators, the Court, and One Call.

93. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Utility Locators' claims.

94. The questions of law and fact that are common to each Hourly Utility Locator predominate over any questions affecting solely the individual members.

95. The common questions of law and fact include: (1) whether One Call compensated Hudson and the other Hourly Utility Locators their earned wages on a non-weekly basis; and (2) whether One Call paid Hudson and the other Hourly Utility Locators their lawfully earned wages on an untimely basis.

96. Hudson knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

97. As part of its regular business practices, One Call intentionally, willfully, and repeatedly violated the NYLL with respect to Hudson and the other Hourly Utility Locators.

98. One Call's illegal policies uniformly deprived Hudson and the other Hourly Utility Locators of the lawfully earned wages they are owed under New York law.

## CAUSE OF ACTION

### FAILURE TO PAY TIMELY WAGES UNDER THE NYLL
### (CLASS ACTION)

99. Hudson incorporates all other paragraphs by reference.

100. Hudson brings his NYLL claims as a class action on behalf of himself and the other similarly situated Hourly Utility Locators pursuant to FED. R. CIV. P. 23.

101. Section 191 of the NYLL requires employers, like One Call, to pay manual workers, including Hudson and the other Hourly Utility Locators, their lawfully earned wages weekly and not

later than seven calendar days after the end of the week in which such wages are earned. *See* NYLL § 191(1)(a).

102. NYLL § 191's timely payment of wages provisions and its supporting regulations apply to One Call and protect Hudson and the other Hourly Utility Locators.

103. One Call violated, and is violating, the NYLL by failing to pay Hudson and the other Hourly Utility Locators on a timely basis. *See* NYLL § 191(1)(a).

104. One Call's unlawful conduct harmed Hudson and the other Hourly Utility Locators by depriving them of the earned wages they are owed.

105. In violating the NYLL, One Call acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law.

106. Thus, One Call's NYLL violations with respect to Hudson and the other Hourly Utility Locators were "willful" within the meaning of NYLL § 198.

107. In *Caul v. Petco Animal Supplies, Inc*, Judge Kovner of the Eastern District of New York held the NYLL's liquidated damages provisions are "designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed." No. 20-CV-3534 (RPK)(SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021), *motion to certify appeal denied*, No. 20-CV-3534 (RPK)(SJB), 2021 WL 6805889 (E.D.N.Y. Dec. 22, 2021) (citing *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)).

108. Accordingly, Hudson and the other Hourly Utility Locators are entitled to recover the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

### JURY DEMAND

109. Hudson demands a trial by jury.

**RELIEF SOUGHT**

WHEREFORE, Hudson, individually and on behalf of the other Hourly Utility Locators, seeks the following relief:

a. An Order designating this lawsuit as a class action and certifying the putative class of Hourly Utility Locators pursuant to FED. R. CIV. P. 23;

b. An Order certifying Hudson as the Class Representative and designating his counsel as Class Counsel to represent the interests of the Hourly Utility Locators;

c. Liquidated damages in the amount of the untimely wage payments pursuant to the NYLL;

d. Pre- and post-judgment interest at the highest applicable rates;

e. Reasonable attorneys' fees and costs of the action; and

f. Such other relief as this Court shall deem just and proper.

Dated: December 14, 2023

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____
　　Brent E. Pelton
111 Broadway, Suite 1503
New York, New York 10006
Phone: (212) 385-9700

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:　 (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:　 (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR HUDSON AND THE HOURLY UTILITY LOCATORS**